**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| Sylvester Brown, | ) | 3:07-CV-308-ECR-VPC |
| Plaintiff, | ) | |
| vs. | ) | **Order** |
| TA OPERATING LLC D.B.A. TRAVEL CENTERS OF AMERICA, ET AL, | ) | |
| Defendants. | ) | |

This case arises out of the termination of Plaintiff Sylvester Brown from Defendant TA Operating LLC d.b.a. Travel Centers of America ("Travel Centers"). Plaintiff alleges that he was terminated because of his race. Now pending is Defendant's motion for summary judgment (#62).

The motion is ripe, and we now rule on it.

**I. Factual and Procedural Background**

Plaintiff is a black male who was discharged on November 14, 2003, from his position as manager of a Sparks, Nevada restaurant owned by Defendant. (P.'s Opp at 2 (#63).) Plaintiff was discharged after a large discrepancy between the actual and reported inventory was discovered. (See id.) At the time of his discharge Plaintiff had worked for Defendant for less than six months. (Id.) Plaintiff alleges that he was fired because of his race. Specifically, he contends that Keith O'Dell, the site manager, used

inventory errors as a pretext to terminate Plaintiff.  (P.'s Opp. at 2 (#63).)

On July 9, 2007, Plaintiff filed the complaint (#1) in the present lawsuit.  On November 7, 2008, Plaintiff filed an amended complaint (#24).  On February 24, 2010, Defendant filed a motion for summary judgment (#62).  Plaintiff opposed (#63) the motion, and Defendant replied (#64).

## II. Motion for Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Baqdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v.

2

1  Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met
2  its burden, the party opposing the motion may not rest upon mere
3  allegations or denials in the pleadings, but must set forth specific
4  facts showing that there exists a genuine issue for trial.  Anderson
5  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the
6  parties may submit evidence in an inadmissible form - namely,
7  depositions, admissions, interrogatory answers, and affidavits -
8  only evidence which might be admissible at trial may be considered
9  by a trial court in ruling on a motion for summary judgment.  FED.
10 R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179,
11 1181 (9th Cir. 1988).
12      In deciding whether to grant summary judgment, a court must
13 take three necessary steps: (1) it must determine whether a fact is
14 material; (2) it must determine whether there exists a genuine issue
15 for the trier of fact, as determined by the documents submitted to
16 the court; and (3) it must consider that evidence in light of the
17 appropriate standard of proof.  Anderson, 477 U.S. at 248.  Summary
18 judgment is not proper if material factual issues exist for trial.
19 B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.
20 1999).  "As to materiality, only disputes over facts that might
21 affect the outcome of the suit under the governing law will properly
22 preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.
23 Disputes over irrelevant or unnecessary facts should not be
24 considered.  Id.  Where there is a complete failure of proof on an
25 essential element of the nonmoving party's case, all other facts
26 become immaterial, and the moving party is entitled to judgment as a
27 matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a
28

disfavored procedural shortcut, but rather an integral part of the federal rules as a whole.  Id.

### III. Discussion

Plaintiff asserts that he has been the victim of purposeful discrimination.  Specifically, Plaintiff alleges that he was terminated because of his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1967, 42 U.S.C. §§ 2000(e)-2000(e)-17 (1982) ("Title VII").

A. Title VII Statute of Limitations

A Title VII claimant is authorized to file suit only if the claimant has filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or appropriate state agency and obtained a right-to-sue-letter.  42 U.S.C. §§ 2000e-5(e), (f); Sommatino v. United States, 255 F.3d 704, 708-09 (9th Cir. 2001).  Such a suit must be commenced not more than ninety days after receipt of the right-to-sue-letter.  42 U.S.C. § 2000e-5(f)(1); Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1121 (9th Cir. 2007) ("If a litigant does not file suit within ninety days '[of] the date EEOC dismisses a claim,' then the action is time-barred.").  There exists a rebuttable presumption that a claimant received the right-to-sue letter within three days of the EEOC's issuance of the letter.  Payan, 495 F.3d at 1125.

In this case, Plaintiff filed his charge of discrimination with the Nevada Equal Rights Commission ("NERC").  (P.'s Opp. at 2 (#63).)  On January 20, 2004, Shannon Bryant — Plaintiff's former attorney — sent NERC a letter informing them that Mr. Bryant was the

4

attorney of record for Plaintiff. (P.'s Opp., Ex. 4 (#63-4).) On January 11, 2006, NERC sent a letter to Mr. Bryant informing him that NERC was closing its file. (Id., Ex. 7.) On September 27, 2006, however, the EEOC sent Plaintiff's right-to-sue letter to the address listed on Plaintiff's original filing, not to Mr. Bryant. (Id., Ex. 9.) Plaintiff was no longer living at that address and had moved to Florida. (Id.) There is evidence in the record that Plaintiff filed a change of address form at the post office when he moved to Florida, and received his forwarded mail. (Dep. of Brown 69:23-70:1 (#63-1).) There is no evidence either that Plaintiff's right-to-sue letter was returned to the EEOC as undeliverable or that Plaintiff informed the EEOC that he had moved. Plaintiff did not file the present lawsuit until July 9, 2007 — more than nine months after the EEOC sent the original right-to-sue letter and more than six months after the ninety-day filing period expired. Plaintiff's current counsel has sought and obtained another right-to-sue letter from the EEOC. (Id., Exs. 11-13.) The existence of a second right-to-sue letter, however, does not lift the statute of limitations bar created by the first letter.

   Plaintiff argues that his failure to file within ninety days should be excused under the doctrine of equitable tolling. The applicable ninety-day filing period is subject to equitable tolling, but equitable tolling is "to be applied only sparingly and courts have been generally unforgiving when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 384 (9th Cir. 1997)(internal ellipses, quotation marks and citations

5

omitted). In <u>Nelmida</u>, the Ninth Circuit cited with approval <u>Hill v. John Chezik Imports</u>, 869 F.2d 1122 (8th Cir. 1989): "the Eighth Circuit refused to equitably toll the ninety-day period where the claimant had not informed the EEOC of a change of address. The EEOC had sent the right-to-sue letter to the address it had on record, but the claimant never received it because she had moved. The court held that the claimant received constructive notice when the right-to-sue letter was sent to her old address, and that equitable tolling was not appropriate because the claimant had failed to notify the EEOC of her new address." <u>Nelmida</u>, 112 F.3d at 384 (9th Cir. 1997)(citing <u>Hill</u>, 869 F.2d 1122, 1123-24).

The <u>Hill</u> case is factually distinguishable from this case. Like the Plaintiff in <u>Hill</u>, Plaintiff moved and failed to notify the EEOC of his new address. However, unlike the Plaintiff in <u>Hill</u>, Plaintiff, in this case, had an attorney to whom the EEOC could and should have sent the letter. Therefore, Plaintiff's Title VII claim would be subject to equitable tolling. Nevertheless, we cannot toll Plaintiff's claim. Plaintiff has not provided us with the second right-to-sue letter. Therefore we do not have a date to which we can toll the applicable statute of limitations. Regardless, as discussed below, Plaintiff's Title VII claim fails on the merits.

Plaintiff's section 1981 claim is governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658(a). <u>See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.</u>, 368 F.3d 1053, 1061 (9th Cir. 2004). We now turn to Plaintiff's section 1981 claim. We note that "those legal principles guiding a court in a

Title VII dispute apply with equal force in a § 1981 action." Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003).

B. Analytic Framework

The analytic framework used in Title VII cases also applies to purposeful discrimination claims under section 1981.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 n.1 (1993).  Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a prima facie case under Title VII either by meeting the four-part test laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), or by providing direct or indirect evidence suggesting that the employment decision was based on an impermissible criterion.  Metoyer, 504 F.3d 919, 931 (9th Cir. 2007) ("When responding to a summary judgment motion . . . [the plaintiff] may proceed using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer].") (citation omitted) (alterations in original).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  Id.

To establish a prima facie case under the McDonnell Douglas framework a plaintiff must offer proof: "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the

7

1 plaintiff suffered an adverse employment action; and (4) that the
2 plaintiff's employer treated the plaintiff differently than a
3 similarly situated employee who does not belong to the same
4 protected class as the plaintiff." Cornwell v. Electra Cent. Credit
5 Union, 439 F.3d 1018, 1028 (9th Cir. 2006)(citing McDonnell Douglas
6 Corp., 411 U.S. at 802).

7   Establishing a prima facie case creates a presumption that the
8 plaintiff's employer undertook the challenged employment action
9 because of the plaintiff's race. Id.  To rebut this presumption,
10 the defendant must produce admissible evidence showing that the
11 defendant undertook the challenged employment action for a
12 "legitimate, nondiscriminatory reason." Id.  If the defendant does
13 so, then the plaintiff must then show that the articulated reason is
14 pretextual. Id.  A plaintiff may demonstrate pretext by offering
15 "evidence, direct or circumstantial, that a discriminatory reason
16 more likely motivated the employer to make the challenged employment
17 decision." Davis v. Team Elec. Co., 520 F.3d 1080, 1091 (9th Cir.
18 2008). Alternatively, an employee may offer evidence "that the
19 employer's proffered explanation is unworthy of credence." Id.

20     1. Direct Evidence

21   "Direct evidence is evidence which, if believed, proves the
22 fact of discriminatory animus without inference or presumption."
23 Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir.
24 2003)(internal citation and quotation marks omitted). Brown
25 contends that summary judgment must be denied because there is
26 direct evidence of racial animus on the part of O'Dell. We
27 disagree. Brown offers no evidence which could be considered

28

8

"direct evidence." Brown's evidence consists of remarks that O'Dell made. There is substantial evidence, however, demonstrating that O'Dell was not the ultimate decisionmaker in this case. Indeed, though it appears O'Dell took part in the decision to terminate, he could not have terminated Brown had French or Millensifier disagreed with the decision to terminate. (Dep. of O'Dell 66:1-9 (#62-2).) The record indicates that Kirk French, the District Manager, instructed O'Dell to terminate Plaintiff following an investigation into the inventory disparity conducted on November 12, 2003, by Jim Millensifer ("Millensifer"), a restaurant specialist. (Sparks Fill Serve Restaurant Margin Investigation (#62-4)); (Dec. Of Kirk French ¶ 15 (#62-4).) Brown has offered no evidence of discriminatory remarks made by French or Millensifer. See Vasquez, 349 F.3d at 640 (refusing to find that discriminatory remarks constituted direct evidence absent a "nexus" between subordinate's discriminatory remarks and superior's subsequent employment decisions). See also Willis v. Marion County Auditor's Office, 118 F.3d 542, 548 (7th Cir. 1997) (refusing to impute racial bias of subordinates who reported rule violation to superior because superior did her own independent investigation); Long v. Eastfield Coll., 88 F.3d 300, 306-07 (5th Cir. 1996) (noting that, if final decisionmaker based decision on independent investigation, causal link between subordinate's retaliatory motive and plaintiff's termination would be broken).

Brown has no direct evidence of discriminatory motive and thus must proceed under the McDonnell Douglas framework. See Enlow v. Salem-Keizer Yellow Cab Co., Inc, 389 F.3d 802, 810 (9th Cir.

9

2004)(ADEA case)("When a plaintiff alleges disparate treatment based on direct evidence . . . we do not apply the burden-shifting analysis . . . .")

### 2. McDonnell Douglas Framework

In this case, Plaintiff has not made a prima facie case for discrimination because he has not demonstrated that a similarly situated person of another race was treated differently. The requirement that a similarly situated member of another race was treated differently can be satisfied, in the discriminatory discharge context by showing that the Plaintiff was "replaced by an employee outside [his] protected class with equal or inferior qualifications." Lobster v. Sierra Pac. Power Co., 12 F. Supp. 2d 1105, 1112 (D. Nev. 1998). In this case there is no admissible evidence pertaining to who replaced Plaintiff or the caliber of his or her qualifications. We note that the NERC Investigative Report indicates that Plaintiff reported to the NERC investigator that he was replaced by a white woman named Suzette Smith. (Investigative Report, Ex. 6 (#63-6).) This finding of fact appears to be based on inadmissible hearsay. Regardless, neither party has brought to our attention any evidence — admissible or otherwise — regarding Suzette's Smith's qualifications.

Even if Plaintiff had made prima facie case, however, Defendants have produced a substantial amount of admissible evidence showing that they undertook the challenged employment action for a "legitimate, nondiscriminatory reason." See Cornwell, 439 F.3d at 1028. Specifically, there is overwhelming evidence Plaintiff was discharged because it was discovered that there was a

10

discrepancy of around $7,000.00 between the reported and actual inventory of his restaurant.  (See Dep. of Brown 34:10-35:35 (#62-2).)

Plaintiff has, moreover, failed to produce enough evidence to allow a reasonable fact-finder to conclude either 1) that the employer's explanation is false, or 2) that the true reason for the employment action was a discriminatory one. See Nidds, 113 F.3d at 918 n.2.  "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present specific and substantial facts showing that there is a genuine issue for trial.  However, that requirement is tempered by our observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is hardly an onerous one." Noyes v. Kelly Services, 488 F.3d 1163, 1170 (9th Cir. 2007).

Plaintiff argues that pretext can be shown because "the inventory of the store was always off prior to Plaintiff commencing his employment with Defendant, and that such inventory was under the control of Mr. O'Dell.  Furthermore, Plaintiff testified that any inventory he conducted was either with Mr. O'Dell being present or subject to Mr. O'Dell's review.  Therefore, to claim that Plaintiff somehow himself altered the inventory numbers is absurd without Mr. O'Dell's cooperation."  (P.'s Opp. at 11 (#63).)

Assuming it is true that O'Dell was jointly or even primarily responsible for the inventory shortage, Plaintiff has still not demonstrated that Defendant's nondiscriminatory reasons are "unworthy of credence." Davis, 520 F.3d at 1091.  The record indicates that Kirk French, the District Manager, decided to

11

terminate Plaintiff following an on-site investigation into the inventory shortage.  (Sparks Fill Serve Restaurant Margin Investigation (#62-4)); (Dec. Of Kirk French ¶ 15 (#62-4).)  Though it may have been wiser to terminate O'Dell or to terminate both O'Dell and Plaintiff, "[c]ourts have consistently held that they should not second guess an employer's exercise of its business judgment in making personnel decisions, as long as they are not discriminatory." E.E.O.C. v. Republic Servs., Inc., 640 F. Supp. 2d 1267, 1313 (D. Nev. 2009).  Defendant's apparent belief that the inventory discrepancy was due to Plaintiff's performance, and not O'Dell's, even if mistaken, is not grounds for inferring discrimination.

In addition, we note that Defendant's stated reasons for terminating Plaintiff are consistent with their actions.  Plaintiff was terminated within two days of the investigation into the inventory discrepancies.

### C. Hostile Work Environment

Plaintiff contends he was subjected to a hostile work environment as a result of the race-based harassment on the part of O'Dell.  (P.'s Opp. at 11 (#63).)  Defendant contends that Plaintiff's workplace was not objectively abusive or legally hostile.  (Mot. for SJ at 11 (#62).)

To prevail on a hostile workplace claim premised on race, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez, 349 F.3d at 642.  "To determine whether conduct

12

was sufficiently severe or pervasive . . . we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (Internal citation and quotation marks omitted).

Plaintiff alleges that O'Dell made several comments directed to him, such as, "Is that your pen leaking or is it your true color showing through" and "I didn't see you sitting there in the dark." (P.'s Opp. at 4 (#63).) The latter comment was made when Plaintiff was sitting in a well-lit dining room. Brenda Knight, a former employee of Defendant, also testified that O'Dell used the word "nigger" to refer to black people on various occasions, but never said it to Plaintiff's face. (Dep. of Knight 14:1-23 (#63-14).)

When compared to other hostile work environment cases, the events in this case are not severe or pervasive enough to constitute a hostile work environment. In Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990), the court upheld a directed verdict on the plaintiff's hostile work environment claim, despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino. Id. at 1037. Similarly, in Kortan v. Cal. Youth Auth., 217 F.3d 1104 (9th Cir. 2000), the Ninth Circuit held that there was no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or

"Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor.  The court held that, while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment.  Id. at 1111.

Though O'Dell's alleged behavior is regrettable, it was also infrequent, not physically threatening and there is no indication it interfered with his work performance.  As such, we conclude that Plaintiff was not subjected to a hostile work environment.

## V. Conclusion

Plaintiff has not come forth with direct evidence of discrimination.  Therefore, we evaluate his claim under the McDonnell Douglas burden shifting framework.  Plaintiff has not made a prima facie case of discrimination: There is no evidence on the record that a similarly situated member of another race was treated differently.  Regardless, Defendant has satisfied its burden of production and produced admissible evidence showing that it undertook the challenged employment action for a legitimate, nondiscriminatory reason.  Plaintiff, in turn, has failed to produce evidence sufficient to allow a reasonable fact-finder to conclude either that Defendant's explanation is false, or that the true reason for the employment action was a discriminatory one. Therefore, summary judgment in favor of Defendants is appropriate.

14

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion for summary judgment (#62) is granted.

The Clerk shall enter judgment accordingly.

DATED: April 23, 2010.

_____
UNITED STATES DISTRICT JUDGE

15